UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

HORACE W. CRUMP,

                Plaintiff,                      Case No. 1:10-cv-353

v.                                                       Honorable Robert J. Jonker

JOHN PRELESNIK et al.,

                Defendants.

_____/

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*, and Plaintiff has since filed an amended complaint. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards to Plaintiff's amended complaint, the Court will dismiss for failure to state a claim Plaintiff's claims based on alleged violations of the right of access to the courts, procedural and substantive due process, and the First Amendment right to petition, as well as portions of Plaintiff's claims under the Eighth Amendment. For the same reasons, the Court will dismiss Plaintiff's action

against Defendants Heffelbower and Prelesnik. The Court will serve Plaintiff's remaining claims against Defendants Ball, Allen, Larabell, Hodges, Leslie, Beechum, Gonzalez, Choryan and Christiansen.

## Discussion

I. Factual allegations

Plaintiff Horace W. Crump presently is incarcerated at the Lakeland Correctional Facility, but the events giving rise to his action occurred at the Richard A. Handlon Correctional Facility (MTU). He sues the following MTU employees: Warden John Prelesnik; Assistant Deputy Warden (ADW) Gary Ball; Captain Rodney Allen; Assistant Resident Unit Supervisors (ARUSs) (unknown) Hodges and Michael Larabell; Grievance Coordinator C. Heffelbower; Chaplain (unknown) Leslie; Corrections Officers (unknown) Gonzalez, (unknown) Beechum, D. Christiansen, and (unknown) Choryan; one unknown corrections officer who is referred to as "Puddin' Tang"; and one unknown medical provider.

According to Plaintiff, as soon as he was transferred to MTU on January 14, 2010, he became the subject of disparaging remarks about his appearance, his conviction offenses, his religion, his ability to speak Arabic, his jailhouse lawyering, and his interracial daughter and white ex-girlfriend. Plaintiff immediately began to complain and to use the grievance process. He also began to assist other prisoners to file grievances and defend misconduct charges. He claims that he promptly became the target of Defendants' retaliation.

Plaintiff alleges that he was placed in a leaking, flooded cell for an unspecified length of time. Defendants Hodges, Larabell, Allen and Ball were aware of the conditions, but refused to move him, ostensibly as a result of their retaliatory motives. When Plaintiff continued to complain,

Hodges and Allen allegedly threatened to move him to "E" or "F" units, both of which house the residential treatment program for mentally ill prisoners. At some point, Resident Unit Officer Pink became aware of the conditions and moved Plaintiff to another cell. Since Plaintiff was moved, no other prisoner has been placed in the leaking cell, and Plaintiff has been informed that the cell was "condemned" and not fit for human habitation. (Am. Compl., ¶ 7.)

Plaintiff alleges that Defendants Ball, Allen, Larabell, and Hodges refused him a prisoner loan to purchase typing and carbon paper, which he purportedly needed for pending civil and criminal litigation. Plaintiff contends that the denial was in violation of MDOC policy and was retaliatory in nature. He further alleges that Defendants Heffelbower and Prelesnik improperly denied his grievance about the matter. Plaintiff also complains that Defendant Gonzalez spoke to him about his rejected grievance in a "harassing, retaliatory, and threatening manner . . . ." (Am. Compl, ¶ 111.)

Next, Plaintiff contends that he engaged in numerous activities to assist prisoners Delshaun Thomas, Phillip Jackson, Marlon Walker-El, Blake Johnson, Jason Lee Minyard, and Mueem Abdulla Rashad (a/k/a Virgil Ray Green). According to Plaintiff, when these prisoners attempted to oppose policy violations or other wrongs, they were deprived of religious property, issued misconduct tickets, and other hardships. As a result of Plaintiff's legal assistance to these individuals, Plaintiff allegedly was subjected to unspecified retaliation by Defendant Beechum.

Plaintiff further asserts that he requested that Defendant Chaplain Leslie place Al-Islam services on his itinerary so Plaintiff could attend the Quran-mandated Friday group prayer. Such services had been discontinued at MTU some months previously, and Plaintiff had encouraged other Muslim prisoners to file grievances about the lack of services. Leslie demanded that Plaintiff

sign a religious declaration form in order to be considered a Muslim at the facility. Plaintiff refused because policy did not require that he sign a second form. Plaintiff alleges that Defendant Leslie refused Plaintiff's request for services in retaliation for his assistance to other prisoners. Plaintiff further alleges that Defendants Ball and Prelesnik fully supported Leslie's actions.

Plaintiff next alleges that, on January 31, 2010, despite being eligible for and requesting access to the outside weights, he was not permitted to have such access because Gonzalez admittedly was using an old list of eligible prisoners. Plaintiff filed a grievance, but Defendants Heffelbower and Ball allegedly rejected the grievance on February 2, 2010. On February 5, 2010, Gonzalez allegedly confronted Plaintiff about filing grievances, telling Plaintiff he was not in Saginaw anymore and that "[t]hat shit don't fly around here! If you wanna play, lets play." (Am. Compl., ¶ 29.)

Plaintiff contends that, since his encounter with Gonzalez, he is regularly subjected to harassment at breakfast and lunch by unspecified MTU officers who tell him, "We [MTU officers] don't give a fuck about grievances!" and "We'll give you something to grieve about . . . ." (Am. Compl., ¶31.) Plaintiff states that the officers stand immediately behind him, brush against him, and rush him to eat, while calling him names. After one month of such treatment, and after Defendants Allen, Ball, Prelesnik and Heffelbower ignored his grievances, Plaintiff stopped attending breakfast.

On March 9, 2010, Plaintiff's cell was ransacked, his legal papers were shuffled and misplaced, and his Quran and prayer rug were left face down on the muddy floor. Plaintiff alleges that the cell search was orchestrated by Defendants Prelesnik, Allen, Ball and Hodges, together with unknown MTU administrators, nurses, teachers and other personnel. When Plaintiff complained to Ball and Allen that day, they told him they would search his cell whenever they liked. Ball told

Plaintiff to file a grievance, knowing that Plaintiff was on modified access.[1] Heffelbower refused to process the grievance, and Ball supported Heffelbower.

Plaintiff complained to Defendant unknown medical provider that custody staff were making him eat fast, causing his medications to be ineffective. He was prescribed additional medication and was told that health services could order his meals to the unit to alleviate the problem with rushing, but that the medical provider could not intercede with custody staff.

On March 24, 2010, Plaintiff attempted to send out legal mail. Defendants Hodges and Allen refused the mail, and, one hour later, posted a memorandum stating that prisoners had to sign up before the end of the business day to be seen the next day, at the ARUS's discretion. Plaintiff alleges that the memorandum violates Michigan Department of Corrections policy, which he pointed out to Allen and Hodges. They told Plaintiff to sue them.

On March 25, 2010, Plaintiff attempted to assist prisoner Rashad, who had been denied access to the law library. He witnessed Beechum curse Rashad when Rashad asked for Beechum's name. The next day, Beechum ordered Plaintiff over to see him. Defendant Gonzalez identified Plaintiff to Beechum, saying, "That's Mr. Crump. He likes to write grievances." (Am. Compl., ¶ 47.) Beechum asked where Green (Rashad) was, and Plaintiff told him he thought he was working on a grievance against Beechum. Beechum demanded to know whether Plaintiff had seen anything the previous day, and Plaintiff told him he saw him curse Rashad and refuse him the law

---

[1] Under Michigan Department of Corrections policy, a prisoner is placed on modified access for filing "an excessive number of grievances which are frivolous, vague, duplicative, non-meritorious, raise non-grievable issues, or contain prohibited language. . .or [are] unfounded . . . ." MICH. DEP'T OF CORR., Policy Directive 03.02.130, ¶ HH. (effective July 9, 2007). The modified access period is ninety days and may be extended an additional thirty days for each time the prisoner continues to file a prohibited type of grievance. *Id.* While on modified access, the prisoner only can obtain grievance forms through the Step I coordinator, who determines whether the issue is grievable and otherwise meets the criteria under the grievance policy. *Id.*, ¶ KK.

library. Beechum then demanded that Plaintiff unroll his pants legs upon threat of having them unrolled forcibly. Plaintiff alleges the demand and threat were retaliatory. Plaintiff alleges that further unspecified retaliation has been committed by Defendants Beechum, Gonzalez, and Choryan, together with the unknown corrections officer referred to as "Puddin' Tang." (Am. Compl., ¶ 51.)

Plaintiff alleges that he filed a grievance against Gonzalez on February 5, 2010. The grievance was rejected by Heffelbower and Ball. That same day, ostensibly in retaliation for his Plaintiff's grievance, Heffelbower and Ball sought approval by Prelesnik to place Plaintiff on "Grievance Modified Access" for 90 days. Since Plaintiff was placed on modified access, Defendant Heffelbower has rejected all Plaintiff's requests for grievance forms, and Defendants Prelesnik and Ball have declined to intervene. In addition, Defendant Heffelbower allegedly refused to allow Plaintiff to change the date on his rejected grievance.

Plaintiff next alleges that, in late January 2010, he requested a cell move together with his friend, Prisoner Jackson. The two explained to Larabell that they had shared a cell in the past and, because they were both Muslim, they shared the same religious schedule and cleanliness standards. Larabell told Plaintiff that he would move them, but, after Plaintiff filed a lawsuit against Larabell's co-workers, Larabell refused to authorize the move. Larabell told Plaintiff that he was "crazy for thinking that'll happen now!" (Am. Compl., ¶ 67.) Larabell also refused Plaintiff's request for an indigent loan for hygiene items and envelopes, allegedly in retaliation for the lawsuit. In addition, Larabell retaliated by deliberately failing to submit Plaintiff's store request forms, causing Plaintiff to wait 39 days to purchase deodorant, soap and toothpaste. Plaintiff had to type cards and love letters to trade for his hygiene needs. Plaintiff alleges that the lack of hygiene products caused him to be inadequately clean for his daily prayers.

In addition, Plaintiff alleges that, since his initial encounter with Gonzalez, Beechum, Choryan and the unknown corrections officer, he has been ordered twice more to unroll his pants, which resulted in Plaintiff tripping and re-injuring his bad knee, for which had previously undergone surgery to add a pin and screws. Since re-injuring his knee by tripping on his pants, he has been unable to work or participate in sport activities. Plaintiff alleges that the dragging of his pants violates a religious prohibition on dragging the lower garment. In addition, Plaintiff alleges that Defendants Gonzalez, Beechum, Choryan and the unknown correction officer are fully aware of the Muslim religious obligation and specifically target Muslims who roll their pants, while ignoring the same conduct by white prisoners. On April 26, 2010, Defendant Choryan informed Plaintiff that any Muslim with his pants rolled up would be given a major misconduct for disobeying a direct order. Plaintiff informed Choryan that he behavior was retaliatory harassment and told her that he intended to file a grievance and a lawsuit. In response, Choryan told Plaintiff that he had threatened her and she would file a major misconduct ticket against him for threatening behavior. That order was never issued. Defendant Christiansen approached him a few days later and told him that, rather than file the threatening-behavior misconduct ticket, Christiansen would issue a less serious misconduct for insolence. Defendant Allen subsequently tore up the ticket when he saw it was against Plaintiff, though he stated that the ticket would probably be good for him. When Plaintiff mentioned Christiansen in his grievance, Christiansen allegedly retaliated by fabricating a series of minor misconduct tickets. Plaintiff complains that Defendant Christiansen engaged in improper conduct with Plaintiff by telling him, against his wishes, about her personal life and history. Plaintiff alleges that Defendants Heffelbower refused to allow him to file a grievance about Choryan's threat to file a grievance, and Defendants Prelesnik and Ball refused to respond to his complaint.

Plaintiff also alleges that Defendant unknown medical provider has refused to treat the knee injury caused by tripping on his pants. Defendant also has refused to reissue Plaintiff's medical detail for meals in the housing unit, which helped control Plaintiff's acid reflux. Further, Plaintiff complains that Defendant doctor refused to treat or create an incident report regarding bruising and swelling caused by a blood draw. Finally, Defendant doctor has failed to provide Plaintiff with a medical detail for heat-related illness, which would have resulted in his placement in a cooler base cell and issuance of a fan.

Plaintiff alleges that the various incidents violate his rights not to be retaliated and conspired against and violate the First, Eighth and Fourteenth Amendment rights of access to the courts, redress of grievances, free speech and free exercise of his religion, freedom from cruel and unusual punishment and medical care, equal protection, procedural and substantive due process, the Religious Land Use and Institutionalized Persons Act (RLUIPA), and various state-law torts. He seeks injunctive relief and compensatory and punitive damages.

II.  Failure to state a claim

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has

facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 129 S. Ct. at 1949. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Ashcroft*, 129 S. Ct. at 1950 (quoting FED. R. CIV. P. 8(a)(2)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Access to the Courts

Plaintiff alleges that he was denied access to the courts by Defendants Ball, Allen Hodges, and Larabell, presumably when they denied him a prisoner loan for the purchase of paper needed for his legal mail. It is well established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). The principal issue in *Bounds* was whether the states must protect the right of access to the courts by providing law libraries or alternative sources of legal information for prisoners. *Id.* at 817. The Court further noted that in addition to law libraries or alternative sources of legal knowledge, the states must provide indigent

inmates with "paper and pen to draft legal documents, notarial services to authenticate them, and with stamps to mail them." *Id.* at 824-25. An indigent prisoner's constitutional right to legal resources and materials is not, however, without limit. In order to state a viable claim for interference with his access to the courts, a plaintiff must show "actual injury." *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop v. Johnson*, 977 F.2d 996, 1000 (6th Cir. 1992); *Ryder v. Van Ochten*, No. 96-2043, 1997 WL 720482, *1-2 (6th Cir. Nov. 12, 1997). In other words, a plaintiff must plead and demonstrate that the shortcomings in the prison legal assistance program or lack of legal materials have hindered, or are presently hindering, his efforts to pursue a nonfrivolous legal claim. *Lewis*, 518 U.S. at 351-353; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). The Supreme Court has strictly limited the types of cases for which there may be an actual injury to "direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (en banc) (citing *Lewis*, 518 U.S. at 355). In addition, the underlying action must have asserted a non-frivolous claim. *Lewis*, 518 U.S. at 353. Further, the Supreme Court squarely has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. at 353 & n.3). The *Christopher* Court held that, "[l]ike any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Christopher*, 536 U.S. at 416.

Here, Plaintiff has failed entirely to allege actual injury to any legal action and has further failed to indicate whether his underlying legal action was of the type and seriousness to be

protected. Accordingly, he fails to state an access-to-the-courts claim against Ball, Allen, Hodges, and Larabell.

### B. Eighth Amendement

Plaintiff alleges that various Defendants violated his rights under the Eighth Amendment by placing him in a leaking cell for an unspecified period. He also arguably alleges that the denial of his opportunity to access the outside weights violated the Eighth Amendment. Further, Plaintiff's complaints that he was subjected to racial slurs arguably implicates the Eighth Amendment. Finally, Plaintiff complains that Defendant unknown medical provider failed to properly treat his acid reflux and failed to treat his re-injured knee.

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

Plaintiff's exercise claim, *i.e.*, that he was denied the use of certain exercise equipment, is meritless. Eighth Amendment standards entitle prisoners to exercise sufficient to maintain reasonably good physical and mental health. *See Walker v. Mintzes*, 771 F.2d 920, 927 (6th Cir. 1985). Plaintiff's allegation that he was denied access to the outside weights on a single occasion falls far short of alleging that his lack of access to the equipment deprived him of constitutionally adequate exercise.

Moreover, Plaintiff's allegation about being placed in a flooded cell for an indefinite (but apparently short) period of time is insufficient to raise an Eighth Amendment claim. Allegations about temporary inconveniences such as being deprived of a lower bunk, subjected to a flooded cell, or deprived of a working toilet, do not demonstrate that the conditions fell beneath the minimal civilized measure of life's necessities as measured by a contemporary standard of decency. *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001); *see also Adams v. Pate,* 445 F.2d 105, 108-109 (7th Cir. 1971) (holding that conditions that create "temporary inconveniences and discomforts" or that make "confinement in such quarters unpleasant" are insufficient to state an Eighth Amendment claim); *J.P. v. Taft*, 439 F. Supp. 2d 793, 811 (S.D. Ohio 2006) ("[M]inor inconveniences resulting from the difficulties in administering a large detention facility do not give rise to a constitutional claim.") (internal citation omitted).

Further, Plaintiff's allegations that he was subjected to verbal harassment and racial or religious slurs are insufficient to state an Eighth Amendment claim. The use of harassing or degrading language by a prison official, although unprofessional and deplorable, does not rise to constitutional dimensions. *See Ivey*, 832 F.2d at 954-55; *see also Johnson v. Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (harassment and verbal abuse do not constitute the type of infliction of pain

that the Eighth Amendment prohibits). Similarly, an allegation that a prison official used racial slurs does not state an Eighth Amendment claim. *See Ivey*, 832 F.2d at 954-55; *Jones Bey v. Johnson*, 248 F. App'x 675, 677-78 (6th Cir. 2007) (prison guard's use of racial slurs and other derogatory language against state prisoner did not rise to level of a violation of the Eighth Amendment) (citing *Torres v. County of Oakland*, 758 F.2d 147, 152 (6th Cir. 1985)).

Finally, Plaintiff's claim that he was denied medical treatment for his reflux is wholly unsupported. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 97, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001). A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 899 (6th Cir. 2004).

Here, Plaintiff alleges that he complained to an unidentified medical provider that he was being forced to eat too quickly by custody staff, resulting in his medication being ineffective. Plaintiff acknowledges that medical staff increased his medication in response to his complaint.

Plaintiff complains, however, that medical staff should have intervened with custody staff in order to allow him to eat more slowly in the dining hall.

Plaintiff's allegations fail to meet either the objective or subjective prong of the deliberate-indifference standard. An allegation that medical staff did not do precisely what Plaintiff wished does not demonstrate that they were deliberately indifferent to his medical condition. Differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Sanderfer v. Nichols*, 62 F.3d 151, 154-55 (6th Cir. 1995). Accordingly, Plaintiff fails to state an Eighth Amendment claim against the medical provider based on the failure to treat his reflux. Plaintiff's claim against the medical provider for lack of treatment of his knee, however, states a claim for relief.

### C. Right to Petition Government

Plaintiff alleges that he was deprived of his First Amendment right to petition government for a redress of grievances when Defendants Heffelbower, Ball, and Prelesnik improperly rejected his grievances, placed him on modified access, and denied him grievance forms.

The Sixth Circuit has indicated that the filing of grievances is constitutionally protected conduct for which a prisoner cannot be subjected to retaliation. *Shehee v. Luttrell*, 199 F.3d 295, 300-301 (6th Cir. 1999). However, a prisoner has no constitutional right to an effective grievance procedures or access to any such procedure voluntarily established by the state. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases); *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991); *Miller v. Haines*, No. 97-3416, 1998 WL 476247, at *1 (6th Cir. Aug. 3, 1998). Even if Heffelbower's rejections of the Plaintiff's grievances were

erroneous, Plaintiff has suffered no constitutional injury. *See Lyle v. Stahl*, No. 97-2007, 1998 WL 476189, at *1 (6th Cir. Aug. 3, 1998) (prisoner's allegation that grievance was improperly rejected does not present a deprivation of any federal fight, as there is no inherent constitutional right to an effective prison grievance procedure). Accordingly, the court finds that Plaintiff fails to state a claim against Heffelbower for rejecting his grievances, placing him on modified access, and denying him grievance forms.

### D.     Supervisory Liability and Denial of Grievances

Similarly, Plaintiff's remaining claims against Heffelbower and Prelesnik – that they failed adequately to investigate and respond to his grievances and/or failed adequately to supervise their subordinates – fail to state a claim.[2] Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Ashcroft* 129 S. Ct. at 1948; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 575; *Greene*, 310 F.3d at 899; *Summer v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or

---

[2]The Court recognizes that Plaintiff makes one additional allegation involving Defendant Prelesnik. He contends that the alleged retaliatory cell search was conducted "at the behest and orchestration of Defendants Warden Prelesnik, ADW Ball, Capt./RUM Allen and ARUS Hodges by unknown MTU administrators, nurses, teachers, etc." (Am. Compl., ¶ 30.) The Court finds Plaintiff's allegation that all of the listed individuals orchestrated his cell search to be insufficient to state a claim. The allegation of widespread involvement is wholly conclusory. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Ashcroft*, 129 S. Ct. at 1949-50; *Twombly*, 550 U.S. at 555.

failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft*, 129 S. Ct. at 1948. Plaintiff has failed to allege that Defendants Prelesnik and Heffelbower engaged in any active unconstitutional behavior. Accordingly, both Prelesnik and Heffelbower are entitled to dismissal from the action.

### D. Procedural Due Process

Plaintiff alleges that he was deprived of procedural due process, though he does not specify what actions allegedly infringed upon that right. Presumably, Plaintiff intends to assert that the search of his prison cell violated his right to due process. Plaintiff alleges no other facts that conceivably could implicate procedural due process.

The Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976). In *Sandin v. Conner*, 515 U.S. 472, 484 (1995), the Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause. According to the *Sandin* Court, a prisoner is entitled to the protections of due process only when the sanction "will inevitably affect the duration of his sentence" or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 486-87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91 (6th Cir. 1995). The *Sandin* Court concluded that mere placement in administrative segregation did not

implicate a liberty interest because the segregation at issue in that case did not impose an atypical and significant hardship. *Sandin*, 515 U.S. at 484; *Wilkinson v. Austin*, 545 U.S. 209, 222-23 (2005).

The search of a prisoner's cell is an ordinary part of prison confinement. It falls far short of the sort of atypical or significant hardship protected by due process. Accordingly, Plaintiff fails to state a procedural due process claim based on the cell search.

### D. Substantive Due Process

Plaintiff generally alleges that his factual allegations support a claim of substantive due process. "A plaintiff asserting a substantive due process claim faces a virtually insurmountable uphill struggle. He must show that the government conduct in question was so reprehensible as to 'shock the conscience' of the court." *Rimmer-Bey*, 62 F.3d at 791 n.4 (citing *Rochin v. California*, 342 U.S. 165 (1952); *Mertik v. Blalock*, 983 F.2d 1353, 1367-68 (6th Cir. 1993)); *see also Hampton v. Hobbs*, 106 F.3d 1281, 1288 (6th Cir. 1997). Plaintiff's allegations in this case fail to meet this formidable standard. He therefore fails to state a claim that his substantive due process rights were violated.

### E. Remaining Claims

Plaintiff's remaining claims are sufficient to warrant service.

### Conclusion

Having conducted the review now required by the Prison Litigation Reform Act, the Court determines that Plaintiff fails to state a claim based on alleged violations of Plaintiff's right of access to courts, to procedural and substantive due process, to equal protection, and to the protections of the Eighth Amendment and the First Amendment right to petition. Those claims will be dismissed under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c) for failure to

state a claim. For the same reasons, Defendants Heffelbower and Prelesnik will be dismissed from the action. The Court will serve Plaintiff's remaining claims against Defendants Ball, Allen, Larabell, Hodges, Leslie, Beechum, Gonzalez, Choryan and Christiansen.[3]

An Order consistent with this Opinion will be entered.


Dated:      September 8, 2010            /s/ Robert J. Jonker
                                         ROBERT J. JONKER
                                         UNITED STATES DISTRICT JUDGE

---

[3] The Court lacks sufficient information at this time to order service on the unknown corrections officer and unknown medical provider.