UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HORACE W. CRUMP,

        Plaintiff,

Case No. 1:10-cv-353

Hon. Robert J. Jonker

v.

JOHN PRELESNIK, *et al.*,

        Defendants.

                            /

**REPORT AND RECOMMENDATION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. This matter is now before the court on a second motion for summary judgment pursuant to Fed. R. Civ. P. 56(b) filed by defendants Gary Ball, Rodney Allen, Lora Hodges, Michael Larabell, David Leslie, Dennis Beecham, Armando Gonzalez, Barbara Choryan and Dawn Christiansen (docket no. 61) and plaintiff's motion for judgment on the pleadings (docket no. 63).

       **I.**      **Background**

Plaintiff filed a 38-page amended complaint against 15 defendants alleging numerous claims of wrongful conduct that occurred while he was housed by the Michigan Department of Corrections (MDOC) at the Richard A. Handlon Correctional Facility (MTU). Several defendants have been dismissed. The remaining defendants are: Assistant Deputy Warden (ADW) Gary Ball; Captain Rodney Allen; Assistant Resident Unit Supervisers (ARUSs) Lora Hodges and Michael Larabell; Chaplain David Leslie; Corrections Officers Dennis Beecham, Armando Gonzalez, Barbara Choryan and Dawn Christiansen; and Physicians Assistant (P.A.) Brendan Sherry. The present motion for summary judgment was filed by defendants Ball, Allen, Hodges, Larabell, Leslie,

Beecham, Gonzalez, Choryan and Christiansen.[1] Defendants seek summary judgment on grounds that plaintiff failed to exhaust his administrative remedies. Plaintiff's allegations are discussed in the September 8, 2010 Opinion and Order regarding partial service (docket nos. 12 and 13). The court will not repeat those allegations in this report unless necessary to address issues raised in defendants' motion.

## II. Court's previous rulings

This court denied defendants' first motion for summary judgment, which, like the present motion, raised the affirmative defense that plaintiff filed to properly exhaust his claims. *See* Report and Recommendation (docket no. 53) and Order Approving Report and Recommendation (docket no. 60). In approving the Report and Recommendation, the district court stated in pertinent part as follows:

> The Report and Recommendation recommends that Defendants' motion for summary judgment (docket # 40) be denied, because genuine issues of material fact regarding Plaintiff's exhaustion of administrative remedies exist. This recommendation is based on evidence in the record, submitted by Plaintiff, that Plaintiff requested grievance forms in a variety of circumstances, as required by MDOC grievance procedures. (Docket # 6-2, p. 27-35) Defendants object that many of the requests are irrelevant to this lawsuit. Defendants do, however, concede that Plaintiff has exhausted his administrative remedies on at least one issue. (Docket # 54 at 3) After a de novo review of the record, the Court orders that Defendants' motion for summary judgment be denied.
>
> Plaintiff brought suit under 42 U.S.C. § 1983 against numerous defendants, nine of whom remain in the case (Defendants Ball, Allen, Larabell, Hodges, Leslie, Beechum, Gonzalez, Choryan and Christiansen). Plaintiff made numerous allegations, many of which were dismissed by the Court in an earlier order. (Docket ## 12-13) Defendants sought summary judgment on the remaining claims based on Plaintiff's failure to exhaust administrative remedies. (Docket # 40) The motion lists numerous grievances filed by Plaintiff, but it does not address the fact that

---

[1] P.A. Sherry was served on October 17, 2011 and recently filed a separate dispositive motion. *See* Waiver of Service (docket no. 73); Motion to dismiss or for summary judgment (docket no. 76).

2

> Plaintiff was on modified access from February 12 through May 12, 2010, and was only allowed to request a grievance form under MDOC Policy Directive 03.02.130 ¶ KK. *See Walker v. Michigan Department of Corrections*, 128 Fed. Appx. 441, 446-47 (6th Cir. 2005).
>
> The Court agrees with the Magistrate Judge's recommendation that Defendants' motion for summary judgment based on Plaintiff's failure to exhaust administrative remedies should be denied. Defendants concede in their objection that Plaintiff did exhaust at least one grievance against Defendant Leslie. Despite Plaintiff's declaration that he submitted additional grievance requests, Defendants did not include any evidence regarding Plaintiff's request for grievance forms, even though records of such requests are required to be kept under MDOC's own policies. Genuine issues of material fact about Plaintiff's exhaustion exist, and thus Defendants' motion must be denied.

Order at pp. 2-3 (docket no. 60).

### III. Plaintiff's motion for judgment on the pleadings

Plaintiff has filed a motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). *See* Motion (docket no. 63). Fed. R. Civ. P. 12(c) provides that "[a]fter the pleadings are closed -- but early enough not to delay trial -- a party may move for judgment on the pleadings." Fed. R. Civ. P. 7(a) defines "pleadings" to include "a complaint and an answer." A Rule 12(c) motion is considered premature if made before an answer is filed. *See Doe v United States,* 419 F.3d 1058 (9th Cir. 2005); *Progressive Casualty Ins. Co. v. Estate of Crone,* 894 F.Supp. 383 (D. Kansas 1995). Here, the pleadings are not "closed" for purposes of obtaining a judgment on the pleadings, because none of the defendants have filed an answer to the amended complaint. Accordingly, plaintiff's motion for judgment on the pleadings (docket no. 63) is premature and should be denied.

3

## IV. Defendants' motion for summary judgment

### A. Legal Standard

Defendants move for summary judgment on the ground that plaintiff failed to exhaust his administrative remedies prior to filing suit. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further provides that "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by":

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in deciding a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). However, the court is not bound to blindly adopt a non-moving party's version of the facts. "When opposing parties tell

4

two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

B. **Exhaustion requirement**

The Prison Litigation Reform Act ("PLRA") 42 U.S.C. § 1997e, provides that a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). "[A] prisoner's failure to exhaust under § 1997e(a) is an affirmative defense on which the defendant bears the burden of proof." *Vandiver v. Correctional Medical Services, Inc.*, 326 Fed.Appx. 885, 888 (6th Cir. 2009). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741. In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones v. Bock*, 549 U.S. 199, 218 (2007); *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.' " *Jones*, 549 U.S. at 218.

C. **MDOC grievance process**

The MDOC requires prisoners to follow a three-step process to exhaust grievances. *See* Policy Directive 03.02.130 (effective July 9, 2007). A prisoner must first attempt to resolve a problem with the staff member within two business days of becoming aware of the giveable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ P. If the issue is not resolved,

5

then the grievant may file a Step I grievance on the prescribed form within five business days after the grievant attempted to resolve the issue with appropriate staff. *Id.* at ¶¶ P and R. The Policy Directive provides the following directions for completing grievance forms:

> The issues shall be stated briefly but concisely. Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included.

*Id.* at ¶ R (emphasis in original). The prisoner must send the Step I grievance to the appropriate grievance coordinator. *Id.* at ¶ V. If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he must request the appropriate form and send it to the Step II Grievance Coordinator. *Id.* at ¶ BB. Finally, if a prisoner is dissatisfied with the Step II response, or does not receive a timely response, he must send a completed Step III grievance, using the appropriate form, to the Grievance and Appeals Section. *Id.* at ¶ FF.

### D. Discussion

#### 1. Defendant Chaplain Leslie

Defendants contend that plaintiff did not exhaust grievances with respect to the claims alleged against them in the amended complaint. The issue raised in the present motion for summary judgment is whether plaintiff properly exhausted his remaining claims against defendants while he was under modified access from February 12, 2010 through May 12, 2010. As previously discussed, the court has determined that plaintiff properly exhausted his claim against defendant Chaplain Leslie that he had not been scheduled to attend group religious services for two months. Order at pp. 2-3 (docket no. 60); Defendants' Objections at p. 3 (docket no. 54). Accordingly, defendants' motion should be denied to the extent it seeks a grant of summary judgment as to this claim asserted against Chaplain Leslie.

### 2. Defendants Ball, Allen, Hodges, Larabell, Beecham, Gonzalez, Choryan and Christiansen

Defendants have identified nine grievances which plaintiff appealed through Step III while incarcerated at the Richard Handlon Correctional Facility ( MTU) from January 14, 2010 through June 9, 2010. Cathleen Heffelblower Aff. at ¶ 3 (docket no. 62-1). Plaintiff did not exhaust any of these grievances prior to filing this action on April 14, 2010.

Seven of these grievances involved claims unrelated to the present action: MTU-2010-05-0479-27g ("479") (grieved cross-contamination of food service meals with pork); MTU-2010-06-0480-28b ("480") (grieved plaintiff's fear of unidentified staff); MTU-2010-05-521-28a ("521") (denied as duplicative of 479); MTU-2010-02-135-27b ("135") (grieved previous prison transfers dating back to 1994); MTU-2010-02-158-27z ("158") (grieved a threat by Corrections Officer Gonzalez but grievance was rejected because it was dated prior to the time of the alleged incident); MTU-2010-134-28b ("134") (grieved mistreatment while at MDOC's rural correctional facilities since 1994); and, MTU-2010-02-142-28g ("142") (also grieved mistreatment while at MDOC's rural correctional facilities since 1994). *See* Grievances 479, 480, 521, 135, 158, 134, and 142 (docket nos. 41-4, 41-5, 41-6, 41-7, 41-8, 41-10 and 41-11).

In this action plaintiff alleges defendants Ball, Allen, Larabell and Hodges refused him a prisoner loan to purchase typing and carbon paper. *See* Opinion at p. 3 (docket no. 12). Two of the grievances involved an issue raised in the amended complaint: MTU-2010-01-097-14d ("97") (grieved the denial of typing paper, carbon paper and legal envelopes); and MTU-2010-133-28a ("133") (denied as duplicative of 97). *See* Grievances 97 and 133 (docket nos. 41-9 and 41-12). While plaintiff exhausted Grievance 97, this grievance was not exhausted until six weeks after plaintiff filed this action. *See* Grievance 97 (Step III appeal denied on May 24, 2010). Plaintiff

7

cannot rely on a grievance which was exhausted after he filed suit in federal court. A prisoner may not exhaust administrative remedies during the pendency of federal civil rights action. *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir.1999).

In his response to defendants' first motion for summary judgment, plaintiff contended that he could not exhaust grievances through step III while incarcerated at MTU between the dates of February 12, 2010 and May 12, 2010, because he was on modified access. Plaintiff's Response at p. 3 (docket no. 43). While on modified access, plaintiff could only request forms to file a grievance. *Id.* Plaintiff also contends that he properly exhausted his claims when he requested grievance forms and the request was denied. *Id.*

A prisoner is placed on modified access for abusing the grievance system. MDOC Policy Directive, 03.02.130 ¶ HH explains modified access in pertinent part as follows:

> A prisoner or parolee who files an excessive number of grievances which are vague, duplicative, raise non-grievable issues, or contain prohibited language as set forth in Paragraph G, or is found guilty of misconduct for filing an unfounded grievance as set forth in Paragraph L, may have access to the grievance process limited by the Warden or FOA Area Manager for an initial period of not more than 90 calendar days.

When a prisoner is on modified access, his proposed grievances are screened by a grievance coordinator to determine whether to allow the prisoner to file a grievance:

> While on modified access, the prisoner or parolee shall be able to obtain grievance forms only through the Step I Grievance Coordinator. A grievance form shall be provided if the Step I Grievance Coordinator determines that the issue the prisoner or parolee wishes to grieve is grievable and otherwise meets the criteria outlined in this policy. The Grievance Coordinator shall maintain a record of requests received for grievance forms and whether the request was approved or denied and, if denied, the reason for the denial. If a prisoner or parolee on modified access attempts to file a grievance using a form not provided by the Grievance Coordinator, the Grievance Coordinator may reject the grievance in accordance with Paragraph G.

MDOC Policy Directive, 03.02.130 ¶ KK.

The Sixth Circuit has rejected the claim that MDOC prisoners on modified access are unable to exhaust administrative remedies as required by the PLRA. *See Walker v. Michigan Department of Corrections*, 128 Fed. Appx. 441, 446-47 (6th Cir. 2005). However, in reaching this determination, the Court acknowledged that MDOC prisoners on modified can exhaust claims under the PLRA without following the same three step grievance procedure of inmates who are not on modified access:

> With regard to access to the courts, [the MDOC prisoner's] argument is that, as a result of the modified access process, he is unable to exhaust administrative remedies, and thus he cannot ever file a claim in federal court based on a non-frivolous grievance dismissed by a grievance officer. But this cannot be correct; if a grievance officer dismissed a non-frivolous complaint by [the prisoner], that would be the end of possible administrative remedies with regard to that grievance, and a court would thus have jurisdiction to hear a related federal claim, since all possible administrative remedies would have been attempted. *See, e.g.*, *Hartsfield v. Mayer*, No. 95-1411, 1996 WL 43541, at *3 (6th Cir. Feb. 1, 1996) (holding that the MDOC's modified grievance status does not in any way impinge upon a plaintiff's First Amendment right to access to courts); *see also* 42 U.S.C. § 1997e(a) (requiring only exhaustion of *available* administrative remedies).

*Id.*[2]

The issue before the court is whether plaintiff presented evidence that he administratively exhausted claims by requesting grievance forms from the grievance coordinator (former defendant Heffelbower) between February 14, 2010 and March 29, 2010. Plaintiff has presented evidence that he requested grievance forms while on modified access. *See* Kites (docket no. 6-2 pp. 27-35). Defendants contest this evidence. In support of their motion for summary

---

[2] Under *Walker*, prisoners who are on modified access (due to abusing the grievance process) can "properly exhaust" a grievance by doing nothing more than sending a kite to request a grievance. This process bypasses any meaningful review of the grievance by the MDOC and allows prisoners on modified access to file multiple, unreviewed claims directly in federal court. Certainly, the drafters of the PLRA did not intend this result.

9

judgment, defendants have presented the affidavit of former defendant Cathleen Heffelblower, the grievance coordinator at MTU. According to Heffelblower, plaintiff was placed on modified grievance access from February 12, 2010 through May 12, 2010. Heffelblower Aff. at ¶¶ 2-3. In checking her records regarding plaintiff's requests for grievance forms, kept pursuant to Policy Directive 03.02.130 ¶ KK, Heffelblower found no kites from plaintiff requesting grievances while on modified access. *Id.* at ¶¶ 4-6 (*but see*, § IV.D.2. a., *infra*). Heffelblower further stated that, "[i]f such requests were received I would have followed policy and either have sent him a grievance form or denied his request and recorded my action as required." *Id.* at ¶ 6. Assuming that these kites were requests for grievance forms, only one of the kites addressed an issue currently before the court.

      **a.**      **Kite dated February 14, 2010**

In this kite, plaintiff requested a grievance form from Heffelblower to grieve her for placing him on modified access. *See* Kite (docket no. 6-2 at p. 27). This kite is not relevant because the court dismissed Ms. Heffelblower from this action on initial screening for failure to state a claim (i.e., that Heffelblower failed to adequately investigate and respond to grievances, and/or failed to adequately supervise her subordinates). *See* Opinion at pp. 15-16 (docket no. 12).

      **b.**      **Kite dated February 15, 2010**

In this kite, plaintiff wanted to file a grievance over the condition of his cell, alleging that a maintenance man told him it should be condemned. *See* Kite (docket no. 6-2 at p. 28). This claim, characterized as an Eighth Amendment claim, was dismissed on initial screening. *See* Opinion (docket no. 12 at p. 12).

### c. Kite dated February 22, 2010

In this kite, plaintiff wanted to file a grievance RUM Allen for saying "something" to plaintiff about plaintiff helping another prisoner file a grievance against Allen's cousin and other correction officers. *See* Kite (docket no. 6-2 at p. 29). The court agrees with defendants that this claim is not alleged in the amended complaint and not before this court.

### d. Kite dated March 8, 2010

In this kite, plaintiff wanted to file a grievance against Chaplain Leslie because he had not been able to attend religious services for two months. *See* Kite (docket no. 6-2 at p. 30). Defendants concede that this claim is exhausted. *See* Objections at p. 3 (docket no. 54).

### e. Kite dated March 10, 2010

On March 10, 2010, plaintiff wanted to file a grievance against Corrections Officer Gonzalez "and others" who allegedly harassed plaintiff by calling him a "Sunni bitch" and using the phrase "Sunni or later." *See* Kite (docket no. 6-2 at p. 31). This claim, characterized as an Eighth Amendment claim, was dismissed on initial screening. *See* Opinion (docket no. 12 at pp. 12-13).

### f. Kite dated March 17, 2010

In this kite, plaintiff stated:

> ADW Ball told me to send in a grievance regarding my cell being ransacked, but haven't received a response. Could you please tell me the status of this grievance.

*See* Kite (docket no. 6-2 at p. 32). This kite does not seek a grievance form. Furthermore, the claim referred to in this kite, i.e., an alleged retaliatory cell search by ADW Ball and others, was dismissed on initial screening. *See* Opinion (docket no. 12 at pp. 14-15 and fn. 2).

11

### g. Kite dated March 29, 2010

In this kite,, plaintiff stated that he did not have legal supplies that the ADW Ball told him to "put it on s**t paper!" *See* Kite (docket no. 6-2 at p. 33). Plaintiff stated that he wanted to grieve the issue. *Id.* This access to the court claim was dismissed on initial screening. *See* Opinion (docket no. 12 at pp. 9-11).

### h. Kite dated April 1, 2010

In this kite, plaintiff stated that staff was causing medical problems, because he was made to eat so fast that his medicines were ineffective. *See* Kite (docket no. 6-2 at p. 34). This Eighth Amendment claim was dismissed on initial screening. *See* Opinion (docket no. 12 at pp. 13-14).

### i. Undated kite

In an undated kite sent to former defendant MTU Warden Prelesnik, plaintiff claimed that he had been "denied grievances for grievable issues" and asked the Warden to intervene. *See* Kite (docket no. 6-2 at p. 35). This kite does not appear to be a request for a grievance under Policy Directive 03.02.130 ¶ KK. Rather, it appears to be some type of claim directed at former defendant Heffelblower. As defendants point out, this kite is not relevant because the court dismissed Ms. Heffelblower from this action on initial screening.

### j. Conclusion

Defendants concede that plaintiff properly exhausted his claim against defendant Chaplain Leslie. However, based on this record, there is no evidence that plaintiff exhausted his claims against defendants Ball, Allen, Hodges, Larabell, Beecham, Gonzalez, Choryan and Christiansen. Accordingly, the motion for summary judgment (docket no. 61) should be granted as

to defendants Ball, Allen, Hodges, Larabell, Beecham, Gonzalez, Choryan and Christiansen and denied as to Chaplain Leslie.

### V. Recommendation

For the reasons set forth above, I respectfully recommend that plaintiff's motion for judgment on the pleadings (docket no. 63) be **DENIED**.

I further recommend that defendants motion for summary judgment (docket no. 61) be **GRANTED** as to defendants Ball, Allen, Hodges, Larabell, Beecham, Gonzalez, Choryan and Christiansen and be **DENIED** as to defendant Chaplain Leslie.


Dated: February 3, 2012  /s/ Hugh W. Brenneman, Jr.
HUGH W. BRENNEMAN, JR.
United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).