UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HORACE W. CRUMP,

    Plaintiff,

Case No. 1:10-cv-353

Hon. Robert J. Jonker

v.

JOHN PRELESNIK, *et al.*,

    Defendants.

_____/

**REPORT AND RECOMMENDATION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. This matter is now before the court on a motion for summary judgment pursuant to Fed. R. Civ. P. 56(b) filed by defendant Brendan Sherry, P.A. (docket no. 76).

    **I.**    **Background**

Plaintiff filed a 38-page amended complaint against 15 defendants alleging numerous claims of wrongful conduct that occurred while he was housed by the Michigan Department of Corrections (MDOC) at the Richard A. Handlon Correctional Facility (MTU). Plaintiff's allegations are discussed in the September 8, 2010 Opinion and Order regarding partial service (docket nos. 12 and 13). The court will not repeat those allegations in this report unless necessary to address issues raised in defendants' motion.

    **II.**    **Defendant's motion for summary judgment**

    **A.**    **Legal Standard**

Defendant moved for summary judgment on various grounds, including plaintiff's failure to exhaust his administrative remedies prior to filing suit. "The court shall grant summary

judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further provides that "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by":

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in deciding a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted).

"In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). However, the court is not bound to blindly adopt a non-moving party's version of the facts. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

**B.	Plaintiff's claim**

Plaintiff did not identify defendant Sherry in the amended complaint, originally referring to him as "Defendant MD Doe" or "John Doe," a medical provider at MTU who met with plaintiff on April 28, 2010 and allegedly refused to treat plaintiff's knee injury or provide follow-up care. *See* Amend. Compl. at p. 4 and ¶¶ 89-92. In a "Declaration" filed in opposition to defendant Sherry's motion for summary judgment, plaintiff identified his interaction with Sherry as occurring on April 28, 2010, when plaintiff showed Sherry swelling on his leg and a scar on his knee. Plaintiff's Declaration at ¶¶ 3-11 (docket no. 80). Plaintiff stated that defendant Sherry allegedly refused to provide plaintiff with accommodations (i.e., "'meals-in,' crutches, seeing a doctor or a specialist, a stronger pain medication, testing, x-rays, etc."). *Id.* at ¶ 10. Accordingly, the court views plaintiff's claim against defendant Sherry as arising from the April 28, 2010, as alleged in plaintiff's amended complaint and as clarified in his declaration.

**C.	Exhaustion requirement**

The Prison Litigation Reform Act ("PLRA") 42 U.S.C. § 1997e, provides that a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). "[A] prisoner's failure to exhaust under § 1997e(a) is an affirmative defense on which the defendant bears the burden of proof." *Vandiver v. Correctional Medical Services, Inc.*, 326 Fed.Appx. 885, 888 (6th Cir. 2009). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741. In order to properly exhaust administrative remedies, prisoners must complete the administrative

review process in accordance with the deadlines and other applicable procedural rules. *Jones v. Bock*, 549 U.S. 199, 218 (2007); *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218.

### D. MDOC grievance process

The MDOC requires prisoners to follow a three-step process to exhaust grievances. *See* Policy Directive 03.02.130 (effective July 9, 2007). A prisoner must first attempt to resolve a problem with the staff member within two business days of becoming aware of the grieveable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ P. If the issue is not resolved, then the grievant may file a Step I grievance on the prescribed form within five business days after the grievant attempted to resolve the issue with appropriate staff. *Id.* at ¶¶ P and R. The Policy Directive provides the following directions for completing grievance forms:

> The issues shall be stated briefly but concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included.

*Id.* at ¶ R (emphasis in original). The prisoner must send the Step I grievance to the appropriate grievance coordinator. *Id.* at ¶ V. If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he must request the appropriate form and send it to the Step II Grievance Coordinator. *Id.* at ¶ BB. Finally, if a prisoner is dissatisfied with the Step II response, or does not receive a timely response, he must send a completed Step III grievance, using the appropriate form, to the Grievance and Appeals Section. *Id.* at ¶ FF.

4

### E. Exhaustion while on modified access

This is the third motion seeking summary judgment on grounds of exhaustion. In the first motion for summary judgment, defendants Ball *et al.* established that none of the nine Step III grievances filed by plaintiff while at MTU involved issues related to this lawsuit. *See* Defendants' Brief at pp. 6-8 (docket no. 41); MDOC Step III Grievance Report and Copies of grievances (docket nos. 41-3 through 41-12); Report and Recommendation (docket no. 53); Order Approving Report and Recommendation (docket no. 60). In his response to defendants' first motion for summary judgment, plaintiff contended that he could not exhaust grievances through step III while incarcerated at MTU between the dates of February 12, 2010 and May 12, 2010, because he was on modified access and could only request forms to file grievances. Plaintiff's Response at p. 3 (docket no. 43). According to plaintiff, he properly exhausted his claims against the various defendants when he requested grievance forms and the request was denied. *Id.* The court denied the first motion for summary judgment because the modified grievance claim presented a genuine issue of material fact with respect to exhaustion.

A prisoner is placed on modified access for abusing the grievance system. MDOC Policy Directive, 03.02.130 ¶ HH explains modified access in pertinent part as follows:

> A prisoner or parolee who files an excessive number of grievances which are vague, duplicative, raise non-grievable issues, or contain prohibited language as set forth in Paragraph G, or is found guilty of misconduct for filing an unfounded grievance as set forth in Paragraph L, may have access to the grievance process limited by the Warden or FOA Area Manager for an initial period of not more than 90 calendar days.

When a prisoner is on modified access, his proposed grievances are screened by a grievance coordinator to determine whether to allow the prisoner to file a grievance:

While on modified access, the prisoner or parolee shall be able to obtain grievance forms only through the Step I Grievance Coordinator. A grievance form shall be provided if the Step I Grievance Coordinator determines that the issue the prisoner or parolee wishes to grieve is grievable and otherwise meets the criteria outlined in this policy. The Grievance Coordinator shall maintain a record of requests received for grievance forms and whether the request was approved or denied and, if denied, the reason for the denial. If a prisoner or parolee on modified access attempts to file a grievance using a form not provided by the Grievance Coordinator, the Grievance Coordinator may reject the grievance in accordance with Paragraph G.

MDOC Policy Directive, 03.02.130 ¶ KK.

The Sixth Circuit has rejected the claim that MDOC prisoners on modified access are unable to exhaust administrative remedies as required by the PLRA. *See Walker v. Michigan Department of Corrections*, 128 Fed. Appx. 441, 446-47 (6th Cir. 2005). However, in reaching this determination, the Court acknowledged that MDOC prisoners on modified can exhaust claims under the PLRA without following the same three step grievance procedure of inmates who are not on modified access:

With regard to access to the courts, [the MDOC prisoner's] argument is that, as a result of the modified access process, he is unable to exhaust administrative remedies, and thus he cannot ever file a claim in federal court based on a non-frivolous grievance dismissed by a grievance officer. But this cannot be correct; if a grievance officer dismissed a non-frivolous complaint by [the prisoner], that would be the end of possible administrative remedies with regard to that grievance, and a court would thus have jurisdiction to hear a related federal claim, since all possible administrative remedies would have been attempted. *See, e.g.*, *Hartsfield v. Mayer*, No. 95-1411, 1996 WL 43541, at *3 (6th Cir. Feb. 1, 1996) (holding that the MDOC's modified grievance status does not in any way impinge upon a plaintiff's First Amendment right to access to courts); *see also* 42 U.S.C. § 1997e(a) (requiring only exhaustion of *available* administrative remedies).

*Id.*[1]

---

[1] Under *Walker*, prisoners who are on modified access (due to abusing the grievance process) can "properly exhaust" a grievance by doing nothing more than sending a kite to request a grievance. This process bypasses any meaningful review of the grievance by the MDOC and allows prisoners on modified access to file multiple, unreviewed claims directly in federal court. Certainly, the drafters of the PLRA did

In resolving a second motion for summary judgment filed by defendants Ball *et al.*, the court reviewed plaintiff's evidence regarding his attempts to request grievance forms and exhaust grievances while on modified access (February 12, 2010 through May 12, 2010). After reviewing plaintiff's evidence[2], and the affidavit of former defendant Cathleen Heffelblower (the grievance coordinator at MTU)[3], the court determined that plaintiff did not exhaust any grievance while on modified access other than one grievance against defendant Chaplain Leslie. *See* Report and Recommendation at pp. 3-13 (docket no. 84); Order adopting Report and Recommendation (docket no. 94).

In the present motion for summary judgment, the now-identified defendant Sherry relies on the record presented by defendants Ball *et al.* in the previous motions for summary judgment and this court's review of that record, to establish that plaintiff did not exhaust any claims against him by either filing a Step III appeal or by following the applicable procedure while on modified access. *See* MDOC Step III Grievance Report and Copies of grievances (docket nos. 41-3 through 41-12); Report and Recommendation (docket no. 53); Order Approving Report and Recommendation (docket no. 60); Report and Recommendation at pp. 3-13 (docket no. 84); Order adopting Report and Recommendation (docket no. 94). Based on its previous review of this evidence, the court agrees with defendant Sherry that plaintiff did not exhaust a grievance against Sherry. While plaintiff opposes Sherry's motion for summary judgment, plaintiff has not presented

---

not intend this result.

[2] *See* Plaintiff's Kites (docket no. 6-2 pp. 27-35)

[3] *See* Cathleen Heffelblower Affidavit (docket no. 62-1).

any documentation to demonstrate that he exhausted a grievance against Sherry arising out of the April 28, 2010 examination.

Viewing the facts in the light most favorable to the non-moving party (i.e., plaintiff), there is no evidence that plaintiff properly exhausted a claim against defendant Sherry. *Jones*, 549 U.S. at 218; *Woodford*, 548 U.S. at 90-91. Defendant Sherry is entitled to summary judgment.

### III. Recommendation

For the reasons set forth above, I respectfully recommend that defendant Sherry's motion for summary judgment (docket no. 76) be **GRANTED**.

Dated: August 28, 2012  /s/ Hugh W. Brenneman, Jr.
HUGH W. BRENNEMAN, JR.
United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).