UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HORACE W. CRUMP,

        Plaintiff,

Case No. 1:10-cv-353

Hon. Robert J. Jonker

v.

JOHN PRELESNIK, *et al.*,

        Defendants.

_____/

## REPORT AND RECOMMENDATION

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. This matter is now before the court on defendant David Leslie's Motion for summary judgment (docket no. 106) and plaintiff's Motion for summary judgment (docket no. 122).

**I.    Background**

Plaintiff filed a 38-page amended complaint against 15 defendants alleging numerous claims of wrongful conduct that occurred while he was housed by the Michigan Department of Corrections (MDOC) at the Richard A. Handlon Correctional Facility (MTU). All defendants have been dismissed except Chaplain David Leslie.

Plaintiff set forth the following allegations which related to his claims against Chaplain Leslie. Plaintiff was transferred to MTU on January 14, 2010. Amend. Compl. at ¶ 1. Plaintiff "immediately started to complain, attempted to utilize the MDOC grievance process, helped other prisoners filed grievances, assisted them with their misconduct hearings and affirmed a sworn witness affidavit on behalf of a prisoner against an officer, gave the prisoner representative issues for the Warden's forum, requested an itinerary to attend Al-Islam services, and sincerely tried to

positively change the unconstitutional, MDOC policy-violating conditions prevalent at MTU." *Id.* at ¶ 3. Plaintiff also alleged that he "immediately requested" that Chaplain Leslie place Al-Islam services on his itinerary so he could attend "his Quran-mandated Friday congregational prayer." *Id.* at ¶ 19.[1] However, plaintiff was not allowed to attend services in retaliation for informing Muslim prisoners that Leslie and other defendants' action of suspending Al-Islam services at MTU was unconstitutional, and encouraging them to follow-up on grievances regarding this suspension because the prisoners involved "were transferred and they were being punished for what some did personally, and not as some 'jihad,' while others still at MTU were not [punished]." *Id.* at ¶ 20. Chaplain Leslie met with plaintiff after plaintiff held these conversations with prisoners, and after Muslim prisoners made "repeated requests" that plaintiff be allowed to attend services "so he could teach Arabic, recite the Quran properly, etc., and meet with him." *Id.* at ¶ 21. Chaplain Leslie became angry and refused to place Al-Islam services on plaintiff's itinerary. *Id.* After some months, Chaplain Leslie told plaintiff that he needed to sign a religious preference form (RPF). *Id.* at ¶ 22. Plaintiff alleged that he had signed the RPF in 1999 and that MDOC policy does not mandate signing another form if his preference has not changed. *Id.* Plaintiff also showed Chaplain Leslie his "recent classification form completed at MTU" which clearly stated "as all his MDOC paperwork does" that plaintiff is Muslim. *Id.* at ¶ 23.

Plaintiff has sued Chaplain Leslie in his personal capacity, alleging that Leslie retaliated against him for his "jailhouse lawyer" activities in assisting other prisoners and acting as a witness for other prisoners, denying plaintiff religious services in retaliation for his "protected

---

[1] The court notes that the MDOC recognizes a religious group identified as "Al-Islam (Muslim)." *See*, MDOC Policy Directive 05.03.150A (Recognized Religious Groups Authorized to Conduct Group Religious Services/Activities). The MDOC does not recognize certain religious groups (or sects) which plaintiff refers to in this action such as Orthodox Al-Islam, Sunni Muslim, or Shi'a Muslim. *Id.*

2

activities." Amended Compl. at ¶ III and ¶ V (docket no. 11 at pp. 4 and 34-35). Plaintiff's Amended Complaint includes the following claims against Chaplain Leslie: (1) retaliation in violation of the First Amendment; (2) violation of plaintiff's right to practice his religion in violation of the free exercise clause of the First Amendment; (3) substantially burdening plaintiff's religious practice in violation of RLUIPA, 42 U.S.C. § 2000cc ; and (4) state law torts of "injuries to personal liberties, negligence and the intentional infliction of mental and emotional distress." *Id.* at ¶ V (docket no. 11 at pp. 33-34). Plaintiff seeks compensatory and punitive damages against Chaplain Leslie. *Id.* (docket no. 11 at pp. 34-38).

## II. The motions for summary judgment

### A. Legal Standard

Defendants have moved for summary judgment on all three of plaintiff's claims. Plaintiff's motion is effectively a cross-motion for summary judgment on his First Amendment claims. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further provides that "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by":

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

3

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in deciding a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). However, the court is not bound to blindly adopt a non-moving party's version of the facts. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### B. Motions for summary judgment

#### 1. RLUIPA claim

Chaplain Leslie seeks summary judgment on plaintiff's claim for monetary damages for the chaplain's alleged violation of RLUIPA. "Although the statute permits the recovery of 'appropriate relief against a government,' 42 U.S.C. § 2000cc–2(a), this court has recently held that monetary damages are not available under RLUIPA." *Colvin v. Caruso*, 605 F.3d 282, 289 (6th Cir. 2010). *See also*, *Atkins v. Christiansen*, No. 1:08-cv-972, 2011 WL 4527357 at *2 (W.D. Mich. Sept. 28, 2011) ("Because the plaintiff in *Colvin* sued the defendants in both their official and individual capacities, the holding would apply to this case and would bar *any* monetary relief against

[the individual defendants in this case], including relief against [d]efendants acting in their individual capacities") (internal citation omitted). Accordingly, plaintiff's claim is without merit and Chaplain Leslie is entitled to summary judgment on plaintiff's RLUIPA claim.

### 2. First Amendment free exercise claim

"The first Clause in the First Amendment to the Federal Constitution provides that 'Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof.'" *Santa Fe Independent School District v. Doe*, 530 U.S. 290, 301-02 (2000). "The Fourteenth Amendment imposes those substantive limitations on the legislative power of the States and their political subdivisions." *Id.* It is well established that "convicted prisoners do not forfeit all constitutional protections by reason of their conviction and confinement in prison." *Bell v. Wolfish*, 441 U.S. 520, 545 (1979). "Inmates clearly retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987) (internal citation omitted). "Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *O'Lone*, 482 U.S. at 348 quoting *Price v. Johnston*, 334 U.S. 266, 285 (1948) (brackets omitted). This limitation of privileges arises "both from the fact of incarceration and from valid penological objectives - including deterrence of crime, rehabilitation of prisoners, and institutional security." *Id.* citing *Pell v. Procunier*, 417 U.S. 817, 822-23 (1974). Evaluation of penological objectives is committed to the considered judgment of prison administrators who are charged with and trained in the running of the particular institution under examination. *Id.* at 349. To ensure that courts afford appropriate deference to prison officials, the Supreme Court has "determined that prison regulations alleged to infringe constitutional rights

5

are judged under a 'reasonableness' test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights." *Id.*

Here, plaintiff has alleged that Chaplain Leslie, operating under color of state law, denied his First Amendment right exercise his religion when he refused to allow plaintiff to attend Al-Islam group services. As an initial matter, plaintiff has not identified exactly when he requested Chaplain Leslie to authorize him to attend group services. In his complaint, plaintiff alleged that:

> Crump immediately requested that Defendant Chaplain Leslie place Al-Islam services on his itinerary so he could attend his Quran-mandated Friday congregational prayer.

Amend. Compl. at ¶ 19. Assuming that the court adopts this statement as a factual assertion for purposes of the summary judgment motions[2], plaintiff has failed to specify a date on which he spoke

---

[2] Here, plaintiff attempted to create a verified complaint as allowed under 28 U.S.C. § 1746 by including a "verification" on the last page of the pleading. For purposes of responding to a motion for summary judgment, a verified complaint has the same force and effect as an affidavit. *See Lavado v. Keohane*, 992 F.2d 601, 605 (6th Cir. 1993). Section 1746 provides in pertinent part that:

> Wherever, under any law of the United States or under any rule, regulation, order, or requirement made pursuant to law, any matter is required or permitted to be supported, evidenced, established, or proved by the sworn declaration, verification, certificate, statement, oath, or affidavit, in writing of the person making the same (other than a deposition, or an oath of office, or an oath required to be taken before a specified official other than a notary public), such matter may, with like force and effect, be supported, evidenced, established, or proved by the unsworn declaration, certificate, verification, or statement, in writing of such person which is subscribed by him, as true under penalty of perjury, and dated, in substantially the following form: . . .
>
> (2) If executed within the United States, its territories, possessions, or commonwealths: "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date). (Signature)".

28 U.S.C. § 1746.

Plaintiff, however, did not follow the prescribed form. Rather, he created his own declaration stating:

> I, Horace W. Crump, Jr., the Plaintiff in this matter, have read the foregoing Civil Rights complaint and hereby verify that the matters alleged therein are true, except as to matters alleged on information and belief, and as to those, I believe them to be true. I certify

6

to Chaplain Leslie about attending services. As alleged in the amended complaint, plaintiff engaged in a considerable amount of activity with other prisoners before Chaplain Leslie refused to allow him to attend Friday services. Even if the court assumed that plaintiff made this request shortly after his arrival at MTU, a request to attend group religious services is not sufficient without providing the chaplain with evidence of religious preference.

MDOC Policy Directive 05.03.150 ¶ S provides the mechanism by which prisoners can advise MDOC officials of their religious affiliation:

> Each prisoner shall be allowed to identify his/her religious affiliation, but will not be recognized as belonging to, or allowed to participate in the services or activities of, more than one religious group at any given time. CFA prisoners may change their religious affiliation no more often than twice a year and must provide written notice of the change to the institutional chaplain. The Declaration of Religious Preference Form (CJS-177) shall be used to identify and change religious affiliation; the form shall not be retained in any of the prisoner's commitment files, unless requested in writing by the prisoner. Except in SAI [Special Alternative Incarceration Program], the Warden shall insure that the prisoner's religious affiliation as identified on the Declaration of Religious Preference form is entered in the Department's computerized database (e.g., CMIS; OMNI) within five business days after receipt of the form by the chaplain.

MDOC Policy Directive 05.03.150 ¶S.

Plaintiff contends that his 1999 RPF was in force when he arrived at MTU in 2010. In support of this claim, plaintiff relies on interrogatory responses provided by Chaplain Leslie. In

---

under penalty of perjury that the foregoing is true and correct.

Amend. Compl. (docket no. 11 at p. 38). Here, the amended complaint includes allegations which are hearsay, legal conclusions or other matters upon which plaintiff would had no personal knowledge. *See, e.g.*, Amend. Compl. at ¶¶ 3, 5, 6, 7, 20, 30, 33, 66. However, plaintiff has not identified any of these statements as made on information and belief. Because plaintiff did not differentiate between facts stated upon personal knowledge and facts stated upon information and belief, the amended complaint is not verified under 28 U.S.C. § 1746. *See Tenneco Automotive Operating Company, Inc. v. Kingdom Auto Parts*, 410 Fed. Appx. 841, 848 (6th Cir. 2010) (trial court could refuse to consider witness' declarations that did not specify which statements were made under information and belief and which were made from personal knowledge).

7

response to an interrogatory asking "Does the [RPF] have an expiration date?", Chaplain Leslie responded as follows:

> No, but it is not transferred with the prisoner and I must have a record of his RPF which gives me permission to place him on the call out [for group religious services].

Interrogatory No. 7 (docket no. 123-1 at pp. 11-12). Chaplain Leslie also stated that the RPF does not become invalid when a prisoner transfers. Interrogatory No. 9 (docket no. 123-1 at p. 12). When asked "Does the [RPF] become invalid when a prisoner does <u>not</u> change his religious preference?", Chaplain Leslie provided the following response and explanation:

> No, but since it is not kept in a prisoner's file I must have a written record of his religious preference for two reasons.
>
> 1.  Prisoners have a right to religious property whether he [sic] attends a service or not. Prisoner [sic] can not have personal religious property for more than one faith group at a time. It is a class 3 misconduct. If a prisoner room is shook down and personal religious property is found I must have a record of what property he is presently allowed to have.
>
> 2.  He must give me permission to place him on a call out by a signed RPF

Interrogatory No. 8 (docket no. 123-1 at p. 12).

While plaintiff has alleged that "all his MDOC paperwork" shows "that he is 'Muslim'", his MDOC record states otherwise. Upon his incarceration in 1996 plaintiff identified himself as a Protestant. Leslie Aff. at ¶ 4(a) (docket no. 125-2); MDOC Basic Information Report (docket no. 125-2 at p. 17). On May 15 and August 29, 1996 plaintiff stated that he was a Sunni Muslim.[3] Program Classification Reports (docket no. 125-2 at pp. 22-23). During the next 18 months, however, plaintiff identified no religious affiliation. *See* Program Classification Reports

---

[3] *See,* Footnote 1, *supra.*

for September 25, 1996, January 6, 1997 and January 15, 1998 (docket no. 125-2 at pp. 24-26). Then on March 25, 1998 and June 18, 1999, plaintiff identified himself as "Muslim" with no sect designation. Program Classification Reports (docket no. 125-2 at pp. 28-29). Plaintiff declared a religious preference as "Orthodox Al-Islam" on December 20, 1999.[4] MDOC Declaration of Religious Preference Form ("RPF") (docket no. 125-3 at p. 8). However, the next day, plaintiff did not identify himself as having any religious affiliation. Program Classification Report (Dec. 21, 1999) (docket no. 125-2 at p. 30). Similarly, plaintiff did not identify himself as having any religious affiliation on June 27, 2000 and January 30, 2001. Program Classification Report (docket no. 125-2 at pp. 31-32). Thus, contrary to plaintiff's statement that prior to the filing of the present action, "all his MDOC paperwork" clearly states he is "Muslim," his MDOC record reflects that plaintiff has identified himself at various times as Protestant, No Affiliation, Muslim, and Al-Islam.[5]

Upon his transfer to MTU, plaintiff failed to follow the MDOC procedure for notifying prison officials of his current religious preference. There is no evidence that plaintiff requested that the MDOC retain his 1999 RPF in his commitment file or that he executed a new RPF

---

[4] *See,* Footnote 1, *supra.*

[5] In addition, the court notes that after filing this lawsuit plaintiff subsequently filed a lawsuit in the Eastern District of Michigan, based upon his status as a Shi'a Muslim. *See Crump v. Michigan Department of Corrections*, No. 2:11-cv-12146 (E.D. Mich.) (docket no. 1). In this lawsuit, plaintiff identified himself as Shi'a Muslim (*see,* Footnote 1, *supra)*, and alleged in part, that he was one of 200 Shi'a prisoners at the MDOC, and that in September 2010 he complained about the anti-Shi'a living conditions at the Lakeland Correctional Facility. *See Crump*, No. 2:11-cv-12146 (E.D. Mich.) (Compl. at ¶ 12). The record reflects that on October 18, 2010 (less than five months after filing the present action), plaintiff officially changed his religious preference to "Shi'a Islam/Muslim following the Twelve Imams and Jafari Fiqh (Jurisprudence)." RFP (Oct. 18, 2010) (docket no. 125-3 at p. 35). Then, on October 3, 2012, approximately two years after changing his religious preference to Shi'a Muslim, plaintiff signed a declaration in the present case, which suggests that he is currently a practicing member of Al-Islam, stating in part "Al-Islam requires me to pray the Friday <u>congregational</u> prayer in a group setting. It is an unforgivable sin not to when the conditions are right (as they were at MTU)". Declaration (Oct. 3, 2012) (emphasis in original)(docket no. 124).

9

when he arrived at MTU. *See* MDOC Policy Directive 05.03-150 ¶ S. Because plaintiff failed to execute a new RPF at MTU to provide an appropriate notice to the chaplain of his current religious beliefs as of that time, he cannot now fairly claim that Chaplain Leslie failed to honor that religious preference in violation of his First Amendment rights.

Furthermore, plaintiff has neither alleged nor demonstrated that MDOC Policy Directive 05.03-150 ¶ S is itself an unconstitutional restriction on his First Amendment rights. *See generally*, *Williams v. Temple*, 349 Fed.Appx. 594, 596 (2d Cir. 2009) ("The prison in which [the plaintiff] was housed allowed inmates on limited privilege to request to attend religious services, and [the plaintiff] has provided no evidence that he complied with that policy. On this record, [the plaintiff's] evidence cannot support a claim that the prison's policy was not reasonably related to a legitimate penological interests under the Free Exercise Clause.") (internal quotation marks omitted). Accordingly, Chaplain Leslie should be granted summary judgment on this claim.

### 3. First Amendment retaliation claim

Plaintiff alleged that Chaplain Leslie refused his request to attend services in retaliation for plaintiff's assistance provided to other prisoners. Both parties seek summary judgment on this claim. To prove a First Amendment retaliation claim, a plaintiff must establish three elements: "1) the plaintiff engaged in activities protected by the Constitution or statute; 2) the defendant took an adverse action that would deter a person of ordinary firmness from continuing to engage in that conduct; and 3) that this adverse action was taken at least in part because of the exercise of the protected conduct." *Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001). *See also Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). To establish the causation element of a retaliation claim, "the plaintiff must be able to prove that the exercise of the protected

10

right was a substantial or motivating factor in the defendant's alleged retaliatory conduct." *Smith*, 250 F. 3d at 1037, *citing Mount Health City School District Board of Education v. Doyle*, 429 U.S. 274, 287 (1977). "[B]ecause prisoner retaliation claims are easily fabricated, and accordingly pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration, we are careful to require non-conclusory allegations." *Bennett v. Goord*, 343 F.3d 133, 137 (2nd Cir. 2003) (internal quotation marks omitted).

Plaintiff has alleged that his protected conduct was assisting and encouraging other prisoners. As an initial matter, there is no evidence that plaintiff was engaged in protected conduct at MTU. "It is clear in this circuit that an inmate does not have an independent right to help other prisoners with their legal claims." *Thaddeus–X*, 175 F.3d at 395, citing *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir.1993) ("[s]trictly speaking . . . no constitutional right to assist exists"). "However, courts have recognized that prisoners are entitled to receive assistance from jailhouse lawyers where no reasonable alternatives are present and to deny this assistance denies the constitutional right of access to the courts." *Gibbs*, 10 F.3d at 378. For these reasons, a "jailhouse lawyer's" right to assist other inmates is "wholly derivative" of the other prisoner's right of access to courts:

> [A] "jailhouse lawyer's" right to assist another prisoner is wholly derivative of that prisoner's right of access to the courts: prison officials may prohibit or limit jailhouse lawyering unless doing so interferes with an inmate's ability to present his grievances to a court.

175 F.3d at 395, citing *Gibbs*, 10 F.3d at 378. "Thus, only if [the plaintiff's prisoner's] assistance is necessary to vindicate [the other prisoner's] right of access to the courts can [the plaintiff prisoner] too, state a claim of retaliation." 175 F.3d at 395. To demonstrate this, a "jailhouse lawyer" claiming retaliation "may establish protected conduct by proving not that he was the *only* person

11

who could assist [the prisoner accessing the court], but that [the other prisoner] needed assistance and had no reasonable alternative but to seek that assistance from another prisoner." *Evans. v. Vinson*, 427 Fed. Appx. 437, 446 (6th Cir. 2011) (emphasis in original).

As part of his amended complaint, plaintiff provided "declarations" from several prisoners regarding the assistance which he provided to them. *See* Declarations of Thomas, Jackson, Walker-El, Johnson, Minyard and Rashad (docket nos. 6-2 at pp. 6-11). As an initial matter, none of these declarations meet the requirement for a declaration against perjury under 28 U.S.C. § 1746.[6] Even if the court viewed these declarations as properly executed under § 1746, the declarations would not establish that plaintiff's assistance was necessary to vindicate the other prisoner's right of access to the court, i.e., that the declarant needed assistance and had no reasonable alternative but to seek that assistance from another prisoner. While Thomas, Jackson, Walker-El, Johnson and Minyard stated that they would not have known how to proceed in filing lawsuits and/or grievances without plaintiff's help, the record does not establish that these prisoners had no alternative but to seek assistance from another prisoner.[7] On the contrary, Policy Directive 03.02.130 ¶ M specifically provides an alternative for prisoners who need assistance in filing grievances:

> Wardens and FOA [Field Operations Administration] Area Managers shall ensure prisoners and parolees are provided with assistance in completing a grievance form, if needed. In such cases, assistance shall be provided by a staff member who is not involved in the grievance.

---

[6] All of the declarants state that they "affirm under penalty of perjury that the foregoing is true to the best of my information, knowledge and belief." *See* Declarations of Thomas, Jackson, Walker-El, Johnson, Minyard and Rashad (docket nos. 6-2 at pp. 6-11). Because the declarants did not differentiate between facts stated upon personal knowledge and facts stated upon information and belief, the declarations are not verified under 28 U.S.C. § 1746. *See Tenneco Automotive Operating Company, Inc.*, 410 Fed. Appx. at 848.

[7] In his declaration, Rashad did not seek assistance from plaintiff, but identified plaintiff and himself as Muslims and "jailhouse lawyers" who "talk about law, civil procedure, etc." Rashad Decl. (docket no. 6-2 at p. 11).

Policy Directive 03.02.130 ¶ M. Here, there is no evidence that these prisoners were subjected to some type of extraordinary situation which prevented them from seeking assistance from a staff member and left them no alternative but to seek assistance from plaintiff (or another prisoner).

In addition, Chaplain Leslie's alleged refusal to allow plaintiff to attend group services was not an adverse action taken against plaintiff. As discussed, *supra*, plaintiff did not submit an RPF pursuant to the requirements of Policy Directive 05.03.150 ¶ S. Absent the submission of an RPF to notify the officials at MTU that plaintiff was practicing Al-Islam, there was no basis for plaintiff's claim that he had a right to attend that religion's group services at that facility. Because plaintiff had no right to attend the Al-Islam group religious services at MTU, Chaplain Leslie's refusal to call him out for those services cannot be construed as an adverse action, i.e., an action "that would 'deter a person of ordinary firmness' from the exercise of the right at stake." *Thaddeus-X*, 175 F.3d at 396.

### 4. Qualified immunity

Chaplain Leslie seeks qualified immunity with respect to the First Amendment claims.

> Under the doctrine of qualified immunity, government officials performing discretionary functions are shielded from civil liability unless their conduct violates clearly established constitutional rights. *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Thus, a defendant is entitled to qualified immunity on summary judgment unless the facts, when viewed in the light most favorable to the plaintiff, would permit a reasonable juror to find that: (1) the defendant violated a constitutional right; and (2) the right was clearly established. *Pearson v. Callahan*, 555 U.S. 223, 129 S.Ct. 808, 816, 172 L.Ed.2d 565 (2009).

*Bishop v. Hackel*, 636 F.3d 757, 765 (6th Cir 2011). The court may exercise its sound discretion "in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236. Here, the

first prong is lacking. As previously discussed, Chaplain Leslie did not violate plaintiff's constitutional right by failing to call him out for the Al-Islam group religious services. Accordingly, Chaplain Leslie is entitled to qualified immunity.

### III. State law claims

Plaintiff's remaining state law claims should be dismissed. Title 28 U.S.C. § 1367 provides that "the district court shall have supplemental jurisdiction over all other claims that are so related to the claims in the action within such original jurisdiction that they form a part of the same case or controversy." 28 U.S.C. § 1367(a). The court exercised its supplemental jurisdiction over plaintiff's state law claims, because those claims appeared to be intimately related to the alleged § 1983 violation. The dismissal of plaintiff's federal claims against defendants, however, requires the court to re-examine the issue of supplemental jurisdiction for state law claims. A district court may decline to exercise supplemental jurisdiction over a claim if the court "has dismissed all claims over which it has original jurisdiction." *Id.* at § 1367(c)(3). Thus, once a court has dismissed a plaintiff's federal claim, the court must determine whether to exercise, or not to exercise, its supplemental jurisdiction under § 1367. *See Campanella v. Commerce Exchange Bank*, 137 F.3d 885, 892-93 (6th Cir.1998). As a general rule "[w]hen all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims." *Musson Theatrical, Inc. v. Federal Express Corp.*, 89 F.3d 1244, 1254–1255 (6th Cir.1996). Chaplain Leslie should be granted summary judgment with respect to all of plaintiff's federal claims. Accordingly, if the court grants Chaplain Leslie's motion, then it should also dismiss plaintiff's supplemental state law claims asserted against him.

## IV. Recommendation

For the reasons set forth above, I respectfully recommend that defendant Chaplain Leslie's motion for summary judgment (docket no. 106) be **GRANTED**, that plaintiff's motion for summary judgment (docket no. 122) be **DENIED**, and that this action be **DISMISSED**.


Dated:  February 13, 2013                    /s/ Hugh W. Brenneman, Jr.
                                             HUGH W. BRENNEMAN, JR.
                                             United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).