UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HORACE CRUMP, JR.,

       Plaintiff,

                                        CASE NO. 1:10-CV-353

v.

                                        HON. ROBERT J. JONKER

JOHN PRELESNIK, ET AL.,

       Defendants.

_____/

## ORDER APPROVING AND ADOPTING REPORT AND RECOMMENDATION

The Court has reviewed the Magistrate Judge's Report and Recommendation (doc. # 130) and Plaintiff's Objections to Report and Recommendation (doc. # 131). Under the Federal Rules of Civil Procedure, where, as here, a party has objected to portions of a Report and Recommendation, "[t]he district judge . . . has a duty to reject the magistrate judge's recommendation unless, on de novo reconsideration, he or she finds it justified." 12 WRIGHT, MILLER, & MARCUS, FEDERAL PRACTICE AND PROCEDURE § 3070.2, at 381 (2d ed. 1997). Specifically, the Rules provide that:

> The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

FED R. CIV. P. 72(b)(3). De novo review in these circumstances requires at least a review of the evidence before the Magistrate Judge. *Hill v. Duriron Co.*, 656 F.2d 1208, 1215 (6th Cir. 1981).

The Court has reviewed de novo the claims and evidence presented to Magistrate Judge Brenneman, the Report and Recommendation itself, and Plaintiff's Objections.

## I. PLAINTIFF'S RLUIPA CLAIM

The Magistrate Judge found that Defendant David Leslie was entitled to summary judgment on Plaintiff Horace Crump's claim for money damages under RLUIPA, 42 U.S.C. § 2000cc, because "monetary damages are not available under RLUIPA." (Report & Recommendation ("R&R"), doc. # 130, at 4 (quoting *Colvin v. Caruso*, 605 F.3d 282, 289 (6th Cir. 2010).) Crump did not object to the Magistrate Judge's conclusion with respect to that issue, so the Court has no basis for reconsidering it. *Thomas v. Arn*, 474 U.S. 140, 149-50 (1985). Even had Crump objected to this aspect of the Magistrate Judge's Report and Recommendation, moreover, the law is clear that claims for money damages under RLUIPA are barred by the Eleventh Amendment. *Colvin*, 605 F.3d at 289; *Cardinal v. Metrish*, 564 F.3d 794, 801 (6th Cir. 2009).[1] Thus, the Magistrate Judge was justified in concluding that Leslie is entitled to summary judgment on Crump's RLUIPA claim.

## II. PLAINTIFF'S FIRST AMENDMENT RETALIATION CLAIM

The Magistrate Judge also found that Leslie was entitled to summary judgment on Crump's First Amendment retaliation claim, principally because Crump has not shown that his work as a jailhouse lawyer the sort of protected conduct that can give rise to a First Amendment retaliation claim. On that point, the Magistrate Judge's conclusions were both factually sound

---

[1] RLUIPA authorizes relief only "against a government." 42 U.S.C. § 2000cc-2(a). This includes Leslie in his official capacity, but not in his individual capacity. RLUIPA does not create a cause of action against Leslie individually, *Green v. Tudor*, 685 F. Supp. 2d 678, 699 (W.D. Mich. 2010), and, in any event, Crump has not attempted to assert such a claim against Leslie individually.

and legally correct. Crump had no independent right to assist other prisoners in pursuing grievances against MDOC officials, see *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc), nor was his assistance necessary given MDOC's policy requiring wardens and field operations administration area managers to ensure that prisoners receive assistance, as necessary, in completing grievance forms. Michigan Department of Corrections ("MDOC") Policy Directive 03.02.130 ¶ M. Since Crump's assistance was not necessary to vindicate other prisoners' rights of access to the courts, he cannot state a claim that he was retaliated against for assisting other prisoners. *Thaddeus-X*, 175 F.3d at 395.

Furthermore, there is no evidence that Leslie's decision to deny Crump access to group religious services was in any way caused by Crump's provision of legal assistance to other prisoners. To the contrary, Crump alleges that Leslie kept him from joining group services from the moment he arrived and, thus, before he even had an opportunity to help other prisoners with their complaints. (Objections, doc. # 131, at 3 ("Plaintiff *immediately* requested that Defendant place Al-Islam services on his itinerary . . . .") (emphasis added).) And Crump has failed to present even a single piece of evidence suggesting that Leslie actually knew about Crump's assistance and encouragement to other prisoners. There is no basis, in other words, for Crump's contention that Leslie's preventing him from attending group religious services was caused by, or even related to, Crump's work as a jailhouse lawyer. The Magistrate Judge was justified in concluding that Leslie is entitled to summary judgment on Crump's First Amendment retaliation claim.

III. PLAINTIFF'S FIRST AMENDMENT FREE EXERCISE CLAIM

Finally, the Magistrate Judge found that Leslie was entitled to summary judgment on Crump's First Amendment free exercise claim. To prove that Leslie unconstitutionally denied him his First Amendment right to freely exercise his religion, Crump must show: (1) that the practice he seeks to protect is religious within his own "scheme of things"; (2) that his religious conviction is sincerely held; and (3) that Leslie's behavior infringed upon his religious practice or belief. *Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001); *Kent v. Johnson*, 821 F.2d 1220, 1224 (6th Cir. 1987). The focus in this matter is on the third prong: whether Leslie actually infringed on Crump's religious practice or belief.

Crump claims Leslie interfered with his free exercise of his Muslim faith by refusing to let him participate in Friday group prayers. But this misses the point. Leslie did not ban Crump from prayer; rather, as everyone--including Crump--agrees, Leslie simply conditioned Crump's access to the Muslim group prayer on Crump's willingness to sign a form at his new facility declaring his Muslim affiliation. And everyone, including Crump, agrees that Crump did not sign the form, notwithstanding the fact that completing the form was apparently the only thing standing between Crump and attending Friday group prayers. The constitutional question, then, is whether Leslie's simple requirement--uniformly applied at MTU--that an inmate declare his religious affiliation is an unreasonable imposition on Crump's free exercise of religion. It is not, and there is certainly no clearly established First Amendment authority establishing that a prisoner has the right to attend services even if he fails or refuses to comply with a simple declaration-of-affiliation requirement uniformly imposed by a chaplain at a particular facility. Cf. *Bell v. Wolfish*, 441 U.S. 520, 562 (1979) (observing that judges should generally defer to prison

officials' otherwise constitutional "judgment calls" about what is required for safe and orderly administration of a prison).

Much of Crump's argument, and much of the Magistrate Judge's Report and Recommendation, focuses on whether Leslie should have relied on Crump's decade-old declaration from another facility regarding his Muslim affiliation, and whether MDOC policy actually provided an effective way for the information to be shared across all MDOC institutions. But this is beside the point. The question for this Court on a free exercise claim such as this is what the Constitution requires, not what the MDOC policy provides, or even whether a particular prison employee interpreted or applied it correctly. Even assuming MDOC has an effective way of communicating a prisoner's declared religious affiliation across multiple institutions, and even assuming the chaplain had access to Crump's 1999 declaration from another facility, the constitutional question is whether the decision to require a new declaration from Crump at his new place of incarceration, viewed in light of MTU's legitimate penological and institutional needs, was so onerous as to be an infringement or interference with his free exercise of religion. *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349-50 (1987) (noting that courts must balance a prisoner's First Amendment rights against the State's right to maintain order, discipline, and security in the prison setting). There is no such authority, let alone clearly established authority, under the First Amendment. To the contrary, prison officials have the undisputed right to place reasonable restrictions on religious practice, consistent with the particular institutional needs of running a prison. See *Turner v. Safley*, 482 U.S. 78, 89 (1987); *Block v. Rutherford*, 468 U.S. 576, 588 (1984); *Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 128 (1977). That is all Leslie required here. Crump had a choice to comply with Leslie's simple

request and thereby obtain access to Friday group prayers, or to refuse the request and not attend Friday group prayers. He chose the latter course and lost access to Friday group prayers for the short time he was at MTU. On those grounds, the Magistrate Judge was correct in finding that Leslie was entitled to summary judgment on Crump's First Amendment free exercise claim.

**ACCORDINGLY, IT IS ORDERED** that the Report and Recommendation of the Magistrate Judge (docket # 130), supplemented by this Order, is adopted as the opinion of the Court.

**IT IS FURTHER ORDERED** that Plaintiff Horace Crump's Motion for Summary Judgment (doc. # 122) on his First Amendment retaliation claim against Defendant David Leslie is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant David Leslie's Motion for Summary Judgment (docket # 106) is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant David Leslie is **TERMINATED** as a party in this case.

**IT IS FURTHER ORDERED** that Plaintiff Horace Crump's Complaint is **DISMISSED**.

    /s/Robert J. Jonker
    ROBERT J. JONKER
    UNITED STATES DISTRICT JUDGE

Dated:  March 29, 2013